**AVENTIS CROPSCIENCE, N.V. Plaintiff,**

v.

**PIONEER HI–BRED INTERNATIONAL, INC. and Dow Agrosciences LLC. Defendants.**

**No. 1:00 CV 00463.**

United States District Court, M.D. North Carolina.

Nov. 20, 2003.

Timothy G. Barber, Bradley Clayton Morris, Womble Carlyle Sandridge & Rice, PLLC, Charlotte, NC, Eric H. Weisblatt, Regis F. Slutter, Barbara W. Walker, Ronni S. Jillions, Susan M. Dadio, Albert Tramposch, Catherine B. Richardson, H. Jonathan Redway, David M. Schlitz, Ryan P. Page, Burns Doane Swecker & Mathis, L.L.P., Alexandria, VA, Allen Robert Baum, Burns Doane Swecker & Mathis, Durham, NC, for plaintiff/counter–defendants.

William Kearns Davis, Daniel Alan M. Ruley, Bell Davis & Pitt, P.A., Winston–Salem, NC, William H. King, Jr., McGuire Woods, LLP, Richmond, VA, Daniel J. Cosgrove, Zarley McKee Thomte Voorhees & Sease, P.L.C., Des Moines, IA, Leora Ben–Ami, Thomas F. Fleming, Howard Suh, Melissa Mandrgoc, Christopher T. Jagoe, Oliver Bennett, Clifford Chance Rogers & Wells, LLP, New York, NY, Kurt E. Lindquist, II, Charlotte, NC, for defendants/counter–claimants.

### ORDER

ELIASON, United States Magistrate Judge.

The matter before the Court concerns defendants' request to conduct discovery in this patent action, with respect to collecting attorneys' fees pursuant to 35 U.S.C. § 285, after plaintiff's patent claims have been dismissed. Plaintiff opposes any additional discovery.

### Factual and Procedural History

Plaintiff filed this action alleging that defendants had infringed four of plaintiff's patents by selling a certain insect resistant corn hybrid. Defendants responded that plaintiff's patents were invalid, unenforceable, or not infringed by the corn hybrid. They also claimed that they should be awarded attorneys' fees, alleging miscon-

duct by plaintiff in procuring its patents and in filing this litigation.

A few months after this suit was filed, a separate declaratory judgment action was filed against plaintiff in the Eastern District of Missouri by Monsanto Company. Monsanto sought to have the same four patents involved in the suit before this Court declared invalid, unenforceable, or not infringed by its corn hybrid. Both this action and the Missouri action proceeded to discovery, with the Missouri case finishing first and reaching the summary judgment stage. On December 27, 2002, the Missouri court issued three separate memoranda and orders finding in Monsanto's favor. It found some of the patents and/or claims were invalid or not infringed based on the effects of collateral estoppel flowing from a prior lawsuit in the District of Connecticut, found that another patent and claim were not infringed, and found that all four patents were unenforceable because of inequitable conduct on the part of plaintiff. This inequitable conduct consisted of plaintiff's submission of a materially false declaration, the Jansens declaration, to the United States Patent and Trademark Office (USPTO).

Following the entry of summary judgment in the Missouri case, defendants moved for summary judgment in the instant action based on the principle of collateral estoppel. After a hearing on that motion, Judge James Beaty, the United States District Judge assigned to this case, entered a Memorandum Opinion on June 20, 2003 which found that collateral estoppel did apply. Accordingly, Judge Beaty adopted the findings of the Missouri court and entered an Order and Judgment granting summary judgment in defendants' favor on all of plaintiff's claims.

The dismissal of plaintiff's claims did not resolve all of the issues in this case. Specifically, defendants' request for an award of attorneys' fees remains pending. Furthermore, the parties disagree whether discovery should be allowed with respect to the attorneys' fees question. At the summary judgment hearing, this dispute was mentioned briefly by the parties who requested that the matter be referred to the undersigned for the scheduling of any remaining discovery. Accordingly, Judge Beaty ordered that the matter be sent to the undersigned "for determination of the scope of discovery and scheduling thereof with respect to the remaining issue relating to attorneys' fees." (June 20, 2003 Order, p. 2) After multiple submissions by the parties and a further hearing, the matter is now before the Court for a ruling regarding whether any further discovery relating to defendants' request for attorneys' fees is appropriate and, if so, when such discovery should be conducted.

### *Discussion*

■ In order to determine whether further discovery should be permitted in this case, it will be helpful to examine the process for awarding attorneys' fees in patent cases. The pertinent statute, 35 U.S.C. § 285, states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The parties agree that under this statute a court must first decide whether, and to what extent, the party requesting a fees award has prevailed. If the requesting party is found to be the prevailing party, the court must then determine whether or not a case is "exceptional." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed.Cir.1998). If the case is exceptional, the court may exercise its discretion and award what it determines to be reasonable fees to the prevailing party. *Id.*

■ The term "exceptional" is not defined by statute, but the Federal Circuit has set out a nonexhaustive list of criteria to be used in deciding the question. The

list focuses on the behavior of the party against which fees are sought. The factors include: (1) willful infringement, (2) inequitable conduct before the USPTO, (3) misconduct during litigation, and (4) vexatious or unjustified litigation or the filing of a frivolous suit. *Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1553–54 (Fed.Cir.1989). Moreover, this conduct must be proven by clear and convincing evidence. *Id.*

In the present case, defendants raise multiple instances of alleged misconduct on the part of plaintiff. Several of these involve some sort of misdeed before the USPTO, while others involve plaintiff's conduct in bringing and pursuing this litigation. However, according to defendants, only one of the bases for their exceptional case argument, the submission of the Jansens declaration to the USPTO, was covered by the decision in Missouri that ultimately led to the dismissal of plaintiff's claims in this Court. The other bases remain unaddressed by any court at this time. More importantly, defendants contend that there is a substantial amount of discovery which still needs to be performed regarding these additional claims of misconduct. Accordingly, they request that the Court allow the parties to finish briefing two motions to compel previously filed by defendants, decide those motions in their favor, and then allow them to take depositions based on any documents produced as a result of the granting of the

motions to compel. Plaintiff, on the other hand, opposes all additional discovery.

So far as the research of the parties and the Court reveals, this is a case of first impression.[1] Neither party has been able to cite a case directly on point where a court has either allowed or refused to allow post-summary judgment discovery on issues of misconduct related to a fees request brought under 35 U.S.C. § 285. In fact, most of the parties' briefing and arguments have been centered around the applicability, or lack thereof, of a series of cases cited by defendants in support of their contention that they are entitled to further discovery. *See Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362, 1380 (Fed.Cir.1999); *A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1312–13 (Fed.Cir. 1988); *Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1466 (Fed.Cir.1988); *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.,* 182 F.3d 1356, 1359 (Fed. Cir.1999); *Nordberg, Inc. v. Telsmith, Inc.,* 82 F.3d 394, 396 n. 1 (Fed.Cir.1996). For this reason, the Court will address these cases first.

According to defendants, the cases cited above stand for the proposition that allegations of inequitable conduct brought under Section 285 are substantive and independent claims which a trial court must consider. Using this principle as a starting point, defendants reason that they are entitled to a trial on all of the allegations supporting their exceptional case argument and further extrapolate that "[i]t

1. Plaintiff cites *Get–A–Grip, II, Inc. v. Hornell Brewing Co., Inc.,* Nos. CIV.A. 99–1332, CIV.A. 00–3937, 2002 WL 234289 (E.D.Pa. Feb 15, 2002) (unpublished). This case arguably provides some support for the proposition that fee discovery may not continue after the granting of summary judgment. However, it involved a refusal by a trial court to allow a prevailing party to engage in further discovery after all discovery had already been completed, summary judgment had been entered, and a ruling had already been made that the prevailing party had not shown the case to be exceptional based on the evidence produced in discovery. *Id.* at *4. In contrast, the issue in the present case is whether to continue a discovery process which has been truncated by the granting of defendants' summary judgment motion, not whether to restart discovery after the final fees decision has been made.

only follows that the defendants are entitled to discovery on the issue on which they have a right to trial." (Parties' Joint Submission at 9).

Defendants' case law does not extend nearly so far as their argument. The cases cited by defendants all involved situations where discovery had been completed prior to an entry of judgment. However, either at or following the entry of judgment, the trial courts did not consider some or all of the claims of inequitable conduct advanced by the prevailing party to support their exceptional case argument. In all of these cases, the Federal Circuit instructed the trial courts to consider all of the allegations of misconduct which might support an exceptional case finding. None of these cases address the suitability of conducting discovery after the entry of summary judgment.

Defendants view Section 285 attorney fees as being akin to an independent, separate cause of action for which discovery must be granted even though the case has been dismissed. This view apparently comes from cases which refer to requests for attorneys' fees as "a separate claim" or a "substantive patent issue." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed.Cir.1999) (fees request is a separate claim); *Pharmacia*, 182 F.3d at 1359 (inequitable conduct is a substantive issue). However, read in context, this language does not elevate defendants' contentions concerning plaintiff's misconduct to the level of a separate, independent claim in the sense of being a cause of action. Neither case supports such a broad proposition.[2]

Defendants would have their request for attorneys' fees treated as if it were a counterclaim or separate cause of action. However, defendants' Section 285 attorney fees request is not a separate, surviving and independent cause of action, but rather a collateral or ancillary issue which is dependent on the main action. Even defendants do not suggest that they could file a request for Section 285 attorney fees alone and outside of a patent action.

In determining whether to allow discovery of ancillary issues after the main action has ended, the Court will first look for guidance in the language of the statute authorizing the fees. The Court notes that the language of 35 U.S.C. § 285 limits attorney fees awards to exceptional cases. In imposing this limit, Congress expressed a desire to curtail attorney fees litigation to rare or unusual circumstances. Defendants now seek a ruling that would expand such litigation not only in scope, but frequency. Based on the intent of the statute, as derived from its terms, the Court finds that fees litigation discovery may, and must, be appropriately confined so as

---

**2.** Neither *Brasseler* nor *Pharmacia* holds that discovery must be extended beyond a summary judgment ruling that disposes of a plaintiff's entire case and leaves only the issue of attorneys' fees to be decided. *Brasseler* only holds that a party does not abandon a request for attorneys' fees in an answer simply by failing to raise it when requesting summary judgment. *Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed.Cir.1999). *Pharmacia* holds that interpretation of 35 U.S.C. § 285 is a matter of substantive, as opposed to procedural, law to be determined by the Federal Circuit, as opposed to the regional circuits. *Pharmacia & Upjohn Co. v.*

*Mylan Pharmaceuticals, Inc.*, 182 F.3d 1356, 1359 (Fed.Cir.1999). It further holds that in a collateral estoppel situation similar to the one which exists in the instant case, the district court must consider a finding of inequitable conduct made in the related case when considering an attorneys' fees request in its own case. *Id.* at 1360. As it pertains to this case, that would mean that this Court must consider the finding of inequitable conduct flowing from the Jansens declaration as found by the Missouri court. The Federal Circuit did not require the district court to conduct discovery on any and all outstanding inequitable conduct issues.

not to allow fee litigation to be the tail that wags the dog.

Cases arising outside the patent context also tightly control and limit attorneys' fees litigation. These cases make it clear that major secondary disputes over attorneys' fees should be avoided. *See Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Vaughn v. Principi*, 336 F.3d 1351 (Fed.Cir.2003); *Peter v. Jax*, 187 F.3d 829 (8th Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000); *Guglietti v. Secretary of Health and Human Services*, 900 F.2d 397 (1st Cir.1990).

Of primary importance is the *Vaughn* case. There, the Federal Circuit was faced with deciding whether attorneys' fees should be awarded to a plaintiff under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, which provides for fees recovery by prevailing parties in certain cases brought against the United States government. The plaintiff had applied for veteran survivor benefits. When her application was denied by the Board of Veteran's Appeals, she appealed. However, while the appeal was pending, Congress changed the law covering the plaintiff's claims. This change resulted in a joint motion by the parties to have the matter remanded for a new determination. The plaintiff, however, also filed a motion requesting that she be awarded fees under the EAJA. *Vaughn*, 336 F.3d at 1353. Even though she was not a "prevailing party" in the usual sense of the phrase, she raised other theories of recovery, including the "inevitable victory" theory. Under this theory, she claimed that she should be considered a prevailing party because, even had the law not changed and forced the remand, she would have inevitably prevailed. *Id.* at 1358.

The Federal Circuit joined several other Federal Courts of Appeals in rejecting plaintiff's attempt to use the inevitable victory theory. It did so in part because of fears that allowing the theory would result in a " 'second major litigation.' " *Id.* at 1359, *citing Buckhannon*, 532 U.S. at 609, 121 S.Ct. at 1843. It also made it clear that this was to be avoided whether the second litigation was over hours expended and rates or over entitlement to a fees award. *Id.* This holding is supported by the United States Supreme Court's decisions in *Buckhannon* and *Hensley*. In both of those cases, the Supreme Court cautioned that fees issues should not spiral out of control and result in major disputes. *Buckhannon*, 532 U.S. at 609–610, 121 S.Ct. at 1843; *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1942. Such disputes lead to a waste of litigant and judicial resources.

■ Based on the language of 35 U.S.C. § 285 and the Federal Circuit's and United States Supreme Court's positions on avoiding sizeable litigation over fees, the Court finds that defendants do not have any entitlement to pursue discovery as they contend. Instead, in each case, the Court must balance the particular request for discovery against the resources that will be expended if the request is granted. In this context, post-summary judgment discovery to determine a party's entitlement to attorney's fees is, in fact, strongly disfavored and normally prohibited. Any attorneys' fees discovery should be limited in both scope and amount, keeping in mind that the need for the discovery must clearly outweigh the potential burden and expense to the courts and the parties.

The efficacy of this rule, which strongly disfavors any post-judgment discovery of Section 285 attorney fees entitlement, can clearly be seen by slightly changing the

facts of this case. For instance, the Missouri decision, and the finding of collateral estoppel on which it was based, came toward the end of discovery in the present case. However, had the timing of the two cases been different, the Missouri decision could just as easily have come the day after defendants filed their answer and before discovery ever began in this Court. Under defendants' view that a Section 285 attorney fees request is akin to a separate cause of action, they would have a right to proceed with discovery on all of the issues raised in their answer which might support their fees request.[3] The attorneys' fees discovery would be, in amount, nearly equal to that which would have been conducted had the case gone to trial. The time, energy, and funds expended by the Court and the parties would completely dwarf the resolution of the basic patent law issues which gave rise to the controversy. Such a result would be unreasonable and outside the intent of Congress.

Moreover, defendants' proposition that the Court should treat Section 285 claims for attorneys' fees as an independent, separate claim heavily relies on their view that they are not only entitled to fees which have been incurred to this point, but also any fees incurred while conducting further discovery related to their fees request. (Tr. of July 24, 2003 Hrg. at 10–11) Thus, in the above hypothetical situation where summary judgment is entered just after an answer is filed, the attorneys' fees incurred for conducting attorneys' fees discovery would be gigantic compared to the minor costs of filing an answer and briefing a summary judgment motion. Such a result would pervert beyond all recognition, the concept behind allowing attorneys' fees. Moreover, it would create such enormous attorney self-interest that it would raise significant questions of propriety and ethics. On the other hand, if attorneys' fees are not allowed for post-judgment discovery, this brings into clear focus the need to disallow or curtail such discovery for the parties' (including defendants') own benefit.

■ An examination of the actual discovery sought in this case also illuminates the reason for restricting attorneys' fees discovery. Here, the discovery proposed by defendants is very extensive. It involves many issues and will require the full litigation of two motions to compel, a substantial production of documents by plaintiff if the motions are granted, and some as yet unspecified number of depositions which, given the parties' track record in this case and the nature of the issues involved, likely will result in further motions for protective orders and/or motions to compel being filed. This extensive discovery process qualifies as a significant secondary litigation which would expend a great amount of the resources of all parties and the Court. The Court cannot countenance such expenditures of time and expense.

In making this decision, the Court is cognizant of the fact that had defendants not moved for summary judgment based on the Missouri decision, they would have been allowed to seek the discovery now in dispute. This result is not as ironic as it might seem at first glance. By filing their summary judgment motion at an earlier time, defendants removed the cloud of litigation hanging over their businesses and spared themselves the cost of both further discovery litigation and litigation on the merits. Moreover, had defendants withheld filing the motion, they may have jeopardized their subsequent request for attor-

---

**3.** This problem would also arise in more common situations such as where a motion to dismiss is granted or where summary judg-ment is granted early in a case based on facts gathered at the beginning of discovery.

neys' fees if the Court should conclude they were "sandbagging" the plaintiff. In awarding attorneys' fees, the Court exercises its discretion and has ample authority to adjust an award so as to discourage opportunistic practices. Therefore, defendants' early filing of their summary judgment motion likely was the better course of action in all events.

For these reasons, the Court will deny defendants' requests for further discovery and, as requested by the parties, will order that defendants submit their fees motion within sixty days of the entry of this Order.

**IT IS THEREFORE ORDERED** that defendants' requests for further discovery be, and the same hereby are, denied.

**IT IS FURTHER ORDERED** that defendants shall file their motions requesting attorneys' fees within sixty days of the entry of this Order.